IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JERRY A. SIMONSEN, JR., )
)
        Plaintiff, ) Case No. 13-CV-635-JED-FHM
v. )
)
McCLINTON ENERGY GROUP, LLC, )
)
        Defendant. )

## OPINION AND ORDER

Before the Court are two Motions for Partial Summary Judgment (Doc. 27, 44) filed by the defendant, McClinton Energy Group, LLC (MCCEG). At the parties' request, the Court heard oral arguments on the Motions on October 30, 2014.

**I.    Background Facts**

Plaintiff is an oil and gas engineer. He was employed with Chesapeake Energy until January 2012, when he was recruited to work for MCCEG in the position of President of Engineering. MCCEG submitted an offer of employment to plaintiff on January 8, 2012, and plaintiff requested several changes to the proposed contract. The plaintiff's changes were approved by MCCEG, and an employment contract was formed on January 13, 2012.

Plaintiff commenced work for MCCEG in January 2012. He quit the job just over a year later, and he subsequently filed suit for constructive discharge, breach of the employment contract, and fraud. Plaintiff alleges that MCCEG breached the contract by (1) failing to pay $185,000 in base salary for three years, (2) failing to timely pay a $20,000 signing bonus, and (3) failing to grant plaintiff a one percent equity stake in MCCEG. In his response briefing and at the hearing, plaintiff represented that his fraud claim is premised upon the terms of the employment contract. According to plaintiff, MCCEG engaged in fraud by (1) materially

misrepresenting that it had a "bonus program" when it did not and (2) making promises in the employment contract (regarding signing bonus, base salary, incentive equity, and duration of employment) which it either had no intention of performing or intentionally breached.

MCCEG seeks partial summary judgment on the breach of contract claims (except the claim relating to delayed payment of the signing bonus), as well as the fraud and constructive discharge claims.

## II.  Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the party seeking summary judgment and ignore evidence offered by the non-movant. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

**III. Discussion**

**A. Constructive Discharge Claim**

MCCEG argues that plaintiff does not have a viable claim for constructive discharge because he has not presented evidence of a violation of a statute or public policy which would support any such claim. Plaintiff did not respond to that part of the summary judgment motion and conceded at the hearing that the constructive discharge claim should be dismissed. Accordingly, the Motion for Partial Summary Judgment (Doc. 27) is **granted** as to the constructive discharge claim.

**B. Breach of Contract Claims**

*1. Signing Bonus*

The employment contract contained a provision which provided that plaintiff would receive a $20,000 signing bonus, payable within four weeks of beginning employment at MCCEG. That bonus was not paid until approximately a year later. At the hearing, MCCEG confirmed that this claim is not the subject of either of its Motions. Accordingly, this claim remains for the jury.

*2. Base Salary*

In February 2013, shortly after the $20,000 signing bonus was paid to the plaintiff, MCCEG reduced plaintiff's base salary from $185,000 to $100,000. Plaintiff alleges that this reduction in salary was in retaliation for plaintiff's demand to be paid the $20,000 signing bonus which had not been timely paid and that the reduction in salary breached the terms of the employment agreement. According to plaintiff, MCCEG was required under the employment contract to pay plaintiff at least $185,000 as a base salary for three years if plaintiff chose to remain employed for those three years. MCCEG argues that the contract's base salary provision

did not require that MCCEG pay the $185,000 except for the first year, and Tony McClinton, the Chief Executive Officer of MCCEG, testified that MCCEG could reduce the plaintiff's salary to whatever MCCEG saw fit to pay him.

MCCEG requests that the Court focus solely on the provision regarding "Base Salary," while plaintiff argues that the Court must consider that provision along with the section of the contract regarding "Duration of Employment." Those provisions are as follows:

> **Base Salary** Initially, you will receive an annual base salary of $185,000. Your base salary shall be subject to annual reviews prior to the end of each fiscal year of employment.
>
> **Duration of Employment** You are guaranteed a minimum of three (3) years employment with MCCEG regardless of responsible subsidiary(s) performance and the opportunity to continue employment with the purchasing company or remain with the executive entities responsible for MCCEG at the date of this letter, should you so choose.

Plaintiff argues that the salary and duration provisions must be read in conjunction with one another, because the three year guarantee of employment with MCCEG is meaningless and illusory if MCCEG could unilaterally reduce plaintiff's income to anything it wished beyond for years two and three. Plaintiff also asserts that the plain meaning of the reference in the Base Salary provision to base salary being subject to annual reviews was a reference to performance reviews, and it is undisputed that MCCEG's reduction of salary had nothing to do with any performance issue or problem such as would justify a reduction in his salary.

The parties are in agreement that Oklahoma law applies to the employment contract. Under Oklahoma law, the question of whether a contract term is ambiguous is a question of law for the court. *Ahlschlager v. Lawton School Dist.*, 242 P.3d 509, 515 (Okla. 2010). The application of an unambiguous contract term is also a legal issue for the court. *Id.* "A contract

4

term is ambiguous if it can be interpreted as having two or more meanings." *Id.* Where the meaning of an ambiguous contract is in dispute, evidence of extrinsic facts and circumstances may be admissible to establish the intention of the parties. *Id.* And the construction of such an ambiguous contract "'becomes a mixed question of law and fact and should be submitted to the jury for its determination under proper instructions by the court.'" *Id.* (citation omitted). However, "the construction of an ambiguous contract is a question of law for the court where the ambiguity can be clarified by reference to other parts of the contract, or where the ambiguity arises by reason of the language used and not because of extrinsic facts." *Scungio v. Scungio*, 291 P.3d 616, 622 (Okla. 2012).

The determination of whether a contract is ambiguous is made after applying the rules of contract construction. *See Atain Specialty Ins. Co. v. Tribal Constr. Co.*, 912 F. Supp. 2d 1260, 1268 (W.D. Okla. 2012) (citing *Dodson v. St. Paul Ins. Co.*, 812 P.2d 374, 376-77 (Okla. 1991) and *State ex rel. Comm'rs of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987)). Pursuant to Oklahoma's rules of contract construction, a contract must be interpreted "to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Okla. Stat.* tit. 15, § 152. The language of the contract is to govern its interpretation, so long as the "language is clear and explicit and does not involve an absurdity." *Id.* § 154; *see also id.* § 155. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." *Id.* § 157. A contract must be interpreted in a manner as will make it operative, definite, reasonable, and capable of being carried into effect. *Id.* § 159. Stipulations necessary to make a contract reasonable are implied if the contract manifests no contrary intention. *Id.* § 171.

Applying the foregoing law to the Base Salary provision, the Court concludes that the contract is ambiguous with respect to whether the parties intended that plaintiff's salary could be reduced, according to the complete discretion of MCCEG, or whether the intent was that plaintiff's base salary would be at least $185,000 for the duration of up to three years of guaranteed employment. Mr. McClinton himself acknowledged that, read together, the Base Salary and Duration of Employment terms could be construed to mean that plaintiff would be employed for a guaranteed minimum of three years at a base salary of $185,000. He testified as follows:

> Q. ... Would you agree with me that when you read that [Duration of Employment] provision in conjunction with the first one, the base salary provision, that would lead one to believe that they would be employed for a minimum of – a guaranteed minimum of three years at a base salary of 185? ... Is that a fair statement?
>
> A. I would initially think that.

(Doc. 31-2 at 4 [Depo. p. 25]) (intervening counsel objections omitted). McClinton subsequently testified that the agreement does not so read, because "[i]t doesn't say what he's going to get paid for the second year or the third year," and that McClinton could have paid plaintiff any amount, subject to minimum wage laws, "as our business sees fit" for the second and third years. (*Id.* at 4-5 [Depo. pp. 25-26]).

Standing alone, McClinton's admission that the two provisions would lead plaintiff to believe that he would be employed for a minimum of three years at a base salary of $185,000 is an acknowledgement that plaintiff's interpretation is reasonable. In addition, Glen Wolford, who was employed by MCCEG at the time of the employment contract, testified that he was principally involved with negotiating the terms of the contract with the plaintiff. (Doc. 31-1 at 23 [Depo. p. 57]). Wolford testified that he did not interpret the contract to allow MCCEG to

6

reduce plaintiff's salary to $100,000 and that such a reduction was never discussed or contemplated in his contract discussions with plaintiff. (*Id.*).

MCCEG relies heavily upon the fact that plaintiff changed the first MCCEG proposal to insert the word "[i]nitially" at the beginning of the Base Salary term. According to MCCEG, plaintiff's insertion of that word makes it clear that plaintiff intended that his salary could be reduced at any time after the first year. Prior to plaintiff's addition of that word, MCCEG's proposal provided: "You will receive an annual base salary of $185,000," and it is reasonable to interpret MCCEG's proposal as intended to provide an annual base salary of $185,000 for each year of plaintiff's employment. Plaintiff also added the entirety of the Duration of Employment provision, which guaranteed him three years of employment. Under the circumstances, and considering the testimony of both Wolford and McClinton, who negotiated and entered the contract with plaintiff, it is reasonable to interpret plaintiff's addition of the word "[i]nitially" to reflect an intent that he would not be limited to $185,000 for the full three years' duration but that he could receive raises based upon his performance. Interpreting the contract to require an annual salary of at least $185,000 is also reasonable in that it would reasonably give effect to the Duration of Employment provision. Mr. McClinton admitted as much in his testimony.

Because the Base Salary provision is reasonably susceptible of at least two different meanings, one which would require that plaintiff be paid an annual salary of at least $185,000 for each of three years of employment and another which would permit MCCEG discretion to adjust plaintiff's salary up *or down* after the first year, the Court concludes that there is an issue of fact which must be determined by the jury. *See Ahlschlager*, 242 P.3d at 515-16 (determining that trial court properly submitted for jury determination a question of what the parties intended by a

contract term that was susceptible of two different meanings). The Motion for Partial Summary Judgment (Doc. 27) is **denied** as to the Base Salary breach of contract claim.

        3.     *Incentive Equity*

Plaintiff also asserts that MCCEG breached the employment contract by failing to provide plaintiff a one percent equity share in MCCEG. MCCEG asserts that the one percent equity share was expressly contingent upon an event that never occurred. The applicable term of the contract provides as follows:

> **Incentive Equity**     You will be eligible to participate in the MCCEG Incentive Stock Plan to be implemented upon the closing of the partnership between Excellere Capital Management, LLC ("Excellere") and the Company. The Incentive Stock will vest over five years in annual installments of 20% per year. All shares vest 100% upon a liquidity event. You will be Granted 1% of the gross Company value.

Plaintiff asserts that the plain meaning of the last sentence of the Incentive Equity term stands alone from the balance of that provision and required that MCCEG grant plaintiff a one percent share in MCCEG. MCCEG argues that the Incentive Equity provision must be read as a whole and that the provision is plainly contingent upon the closing of a partnership between Excellere and MCCEG, which never occurred. The Court agrees with MCCEG, as the Incentive Equity provision is unambiguous. It provides that, upon the closing of a partnership between Excellere and MCCEG, a Stock Incentive Plan would be implemented, and plaintiff would be eligible to participate in that Plan. The term provided for two possible vesting options for the equity share under the Stock Incentive Plan. Upon a liquidity event, the equity share would vest 100%. In the absence of a liquidity event, the share would vest 20% each year over five years. The only reasonable interpretation of the reference to one percent is that it referred to the share of equity that would be granted under the Stock Incentive Plan. Thus, the necessary particulars –

vesting events and amount of equity that would be granted under the Stock Incentive Plan – were spelled out in that full paragraph. However, the Stock Incentive Plan was never implemented because the partnership never closed and thus a condition precedent to any obligation to grant plaintiff an equity share did not occur.

To surgically carve out the last sentence of the Incentive Equity provision is also inconsistent with the applicable rules of contract construction, which are set forth earlier in this Opinion and Order. The Court finds no ambiguity in the terms of the Incentive Equity term. MCCEG's Motion for Partial Summary Judgment (Doc. 27) is thus **granted** as to the plaintiff's claim for breach of the Incentive Equity provision of the contract.

### C. Fraud Claim

Plaintiff claims that MCCEG committed fraud by intentionally breaching the employment contract or making contractual promises it did not intend to keep. Plaintiff first asserts that MCCEG engaged in fraud by materially misrepresenting in the contract that MCCEG had a "bonus program," when it did not have a formal program. That contention is premised upon the following sentence in the employment contract: "You will be eligible to participate in the Company's bonus program to receive a bonus of up to 30% of your base salary, based on the Company's performance to budget and other management objectives." According to plaintiff, McClinton admitted that there was no "bonus program" and thus the contractual representation about a "bonus program" was fraudulent. McClinton testified at deposition as follows:

> Q. And do you know if McClinton Energy paid any bonuses in 2012 based on the company's bonus program?
>
> A. We -- we don't have a bonus program.... [A]t the end of every year I give a bonus to the employees based on performance, and I do that myself. So we don't have a set in stone bonus program.

(Doc. 50-3 at 4-5 [Depo. pp. 34-35]).

9

While plaintiff asserts that MCCEG misrepresented the existence of a "bonus program," it is clear that McClinton testified that bonuses were paid at his discretion, which is entirely consistent with the bonus provision of the employment contract. That provision was titled "**Bonus Opportunity**." The words "bonus program" in the sentence following the heading were not capitalized and did not indicate a formal program. Moreover, plaintiff has not provided evidence to support any assertion that any purported misstatement regarding a bonus would have been material. Indeed, plaintiff conceded at the hearing that he does not claim the Bonus Opportunity provision required that MCCEG pay him a mandatory bonus and thus there was no breach of that provision. With respect to the "Bonus Opportunity" or "bonus program" claim for fraud, MCCEG's Supplemental Motion for Partial Summary Judgment is thus **granted**.

Plaintiff also asserts that MCCEG committed fraud by making contractual promises relating to the signing bonus, base salary, incentive equity, and duration of employment, which MCCEG had no intention of performing or intentionally breached. These provisions are the same as those for which plaintiff has brought breach of contract claims against MCCEG. The signing bonus and base salary breach of contract claims remain for a jury, and the Court has granted summary judgment on the incentive equity provision. As the plaintiff voluntarily resigned after his pay was reduced and he received an offer to return to Chesapeake Energy, there is no genuine issue of material fact regarding the three year duration of employment provision. It is undisputed that MCCEG did not terminate plaintiff's employment before the three year term was up, although the Court has found that the duration provision lends meaning to the Base Salary provision in considering the breach of contract claim.

To the extent that the plaintiff's claims for fraud are coextensive with his breach of contract claims, this Court has previously noted that ordinary breach of contract claims are not actionable as fraud claims, absent peculiar circumstances:

> [I]t is certainly possible to pursue claims for fraud and breach of contract simultaneously under Oklahoma law. In *Specialty Beverages, L.L.C. v. Pabst Brewing Co.,* 537 F.3d 1165 (10th Cir. 2008), the court noted that, "[w]hile a party may not obtain double recovery, election of remedies is not required." *Id.* at 1180. Notwithstanding that general principle, it is well-settled that Oklahoma law does not permit the simultaneous pursuit of fraud and breach of contract claims where the two claims are not sufficiently distinct. *McGregor v. Nat'l Steak Processors, Inc.,* 11–CV–0570–CVE–TLW, 2012 WL 314059 (N.D. Okla. Feb. 1, 2012); *Edwards v. Farmers Ins. Co.,* 08–CV–730–TCK–PJC, 2009 WL 4506218, at *5 (N.D. Okla. Nov. 24, 2009) ("a claim for fraud must be distinct from a claim for breach of contract"). *But see F.D.I.C. v. Hamilton,* 122 F.3d 854, 863 (10th Cir.1997) (noting that a simultaneous fraud claim is available where the formation of the contract is premised upon an intentionally deceptive promise to act; *i.e.,* fraud in the inducement of a contract). In *McGregor,* this Court dismissed a fraud claim premised upon the allegation that the defendants concealed the fact that they had no intention of paying plaintiff. 2009 WL 4506218, at *5. The Court noted that Plaintiff cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendants concealed their intention to breach the contract." The Tenth Circuit, applying Oklahoma law, has likewise rejected such attempts. *See Myklatun v. Flotek Indus., Inc.,* 734 F.3d 1230, 1235–36 (10th Cir.2013) ("the proper remedy for a breach of contract will be found in a breach of contract claim, not in a claim of fraud based on the breaching party's failure to disclose its potential future breach").

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Grp.*, No. 13-CV-762-JED-PJC, 2014 WL 3891267, at *5 (N.D. Okla. Aug. 7, 2014); *see also KT Specialty Distribution, LLC v. Xlibris Corp.*, No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008) ("Plaintiff cannot convert an ordinary breach of contract claim into a tort merely by alleging that defendant intentionally breached the Agreement.").

Based on the foregoing, the Court concludes that there is no genuine dispute of material fact with respect to plaintiff's fraud claim. Plaintiff concedes that the fraud claim is principally premised upon the alleged breaches of the employment contract. In any event, even assuming it were proper to maintain a fraud claim based upon allegations of breach of contract, the plaintiff

11

has not presented evidence that would establish the existence of any genuine issue of material fact as to required elements of a fraud claim, such as misrepresentations, materiality, or any damages that are distinct from breach of contract damages. Accordingly, MCCEG's Supplemental Motion for Partial Summary Judgment (Doc. 44) is **granted**.

**IV.   Conclusion**

The Motion for Partial Summary Judgment on plaintiff's breach of contract and constructive discharge claims (Doc. 27) is **granted in part** and **denied in part**, as set forth above. The Supplemental Motion for Summary Judgment on plaintiff's fraud claims (Doc. 44) is **granted**.

SO ORDERED this 6th day of November, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE